803 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee
v.
ROBERT G. CORACE, JR. and UNITED PIPE LINE COMPANY,
Defendants-Appellants.
 No. 85-1407.
 No. 85-1424.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1986.
 
 Before KRUPANSKY, NELSON and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendants appeal from their convictions for mail fraud and making false statements in connection with the sale of regulated crude oil. They contend that the mail fraud and false statement statutes are repealed by implication, due to the more specific penalty provisions of the Emergency Petroleum Allocation Act (EPAA). They also contend that the EPAA serves to take their property without just compensation. Because there is no merit to either argument, the judgment of the district court is affirmed.
 
 I.
 
 2
 In the summer of 1979, Robert G. Corace, Jr. controlled the corporate defendant, United Pipe Line. The company was in the business of acquiring oil wells, and selling crude oil to refineries. In 1979, the sale of domestic crude oil was subject to federal price controls. The United States Department of Energy administered a three tier pricing system. "Old oil," or lower tier oil, was oil coming from a property that was producing oil in 1972. "New oil," or upper tier oil, was crude oil coming from properties which began production after January 1, 1973, or from older producing properties, to the extent that they exceeded a designated level of production. New oil had a somewhat higher ceiling price than old oil. "Stripper oil," defined as oil produced from a property whose average daily production per well did not exceed ten barrels per day, was exempt from price controls. Under the three tier system, the producer and each reseller of crude were required to certify to the next immediate purchaser the number of barrels of each tier of oil sold in each transaction.
 
 
 3
 Prior to June, 1979, Corace had working interests in a number of oil wells located in Hillsdale County, Michigan, and sold the oil produced from these wells, properly certified, to Marathon Oil Company. Two of these wells, Titus #1 and Titus #2, were the primary wells at issue in this case. They both produced in excess of 70 barrels of oil per day, and were drilled after 1973, thus their oil was classified as "upper tier" crude.
 
 
 4
 In April, 1979, United located a new buyer for its oil; the Gladieux Oil Company. Pursuant to a new contract, United stopped selling oil to Marathon in June, 1979, and began selling its oil to Gladieux. Between June, 1979 and August, 1979, United certified to Gladieux that all of the oil it sold was unregulated "stripper oil." United sold Gladieux 30,290 barrels of oil during June, July, and August, 1979. Of this, Titus #1 and Titus #2 produced 16,373 barrels. The price for "stripper oil" during June was $24.50 per barrel, in July it was $26.50 per barrel, and in August it was $28.50 per barrel. The average price of "upper tier oil" during this period was $13.41 per barrel. Therefore, considering only the Titus wells, United overcharged Gladieux approximately $220,000 for its oil.
 
 
 5
 Both defendants were indicted on July 31, 1984. They were charged with five counts of mail fraud, in violation of 18 U.S.C. Sec. 1344, for having devised a scheme to defraud, and causing checks to be mailed as payment for falsely certified oil on five specific dates in 1979. They were also charged with six counts of making false statements, in violation of 18 U.S.C. Sec. 1001, for falsely certifying crude oil. They were convicted on all counts on March 14, 1985, after a jury trial. Both defendants appeal.
 
 II.
 
 6
 Appellants maintain that 18 U.S.C. Secs. 1001 and 1344 have been impliedly repealed by the provisions of 15 U.S.C. Sec. 754, part of the EPAA. Section 754(a)(3)(B) states:
 
 
 7
 "(B) Whoever willfully violates any provision of such regulation, or any such order shall be imprisoned not more than 1 year, or--
 
 
 8
 "(i) With respect to activities relating to the production or refining of crude oil, shall be fined not more than $40,000 for each violation;
 
 
 9
 "(ii) with respect to activities relating to the distribution of residual fuel oil or any refined petroleum product (other than at the retail level), shall be fined not more than $20,000 for each violation;
 
 
 10
 "(iii) with respect to activities relating to the distribution of residual fuel oil or any refined petroleum product at the retail level or any other person shall be fined not more than $10,000 for each violation, or both."
 
 Section 754(a)(4) states:
 
 11
 "(4) Any individual director, officer, or agent of a corporation who knowingly and willfully authorizes, orders, or performs any of the acts or practices constituting in whole or in part a violation of paragraph (3), shall be subject to penalties under this subsection without regard to any penalties to which that corporation may be subject under paragraph (3) except that no such individual director, officer, or agent shall be subject to imprisonment under paragraph (3), unless he also has knowledge, or reasonably should have known, of notice of noncompliance received by the corporation from the President."
 
 
 12
 Appellants contend that the specific provision of Sec. 754 repeals by implication the general provisions of the mail fraud and false statement statutes.
 
 
 13
 It is a familiar rule that repeals by implication are not favored. The Supreme Court has established two situations where a repeal may be implied.
 
 
 14
 "The cardinal rule is that repeals by implication are not favored. Where there are two acts upon the same subject, effect should be given to both if possible. There are two well-settled categories of repeal by implication--(1) where the provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest. . . ."
 
 
 15
 Posadas v. National City Bank, 296 U.S. 497, 503 (1935).
 
 
 16
 In United States v. Batchelder, 442 U.S. 114, 122 (1979), the Court held that where two statutory provisions overlap, in order to find an implied repeal, the legislative intent to repeal must be manifest in a positive repugnancy between the provisions. It is not enough that the two statutes produce different result, due to different penalty provisions. Id. Applying this standard, other courts have found that Sec. 754 does not implicitly repeal the mail fraud statute. United States v. Zang, 703 F.2d 1186, 1196 (10th Cir. 1982), cert. denied, 464 U.S. 828 (1983). In looking to the legislative history, the Court, in United States v. Zang, 645 F.2d 999, 1004 (TECA), cert. denied, 454 U.S. 864 (1981), quoted from the Senate Conference Committee:
 
 
 17
 "With the exception of this later proviso [limiting the authority to seek a term of imprisonment for corporate officers in absence of noncompliance], nothing in this section is intended to change existing case law relating to the individual responsibility of corporate directors, officers or agents for violations of those corporations." Senate Conference Report, at 200, 94th Congress, 1st Session, reprinted in [1975] U.S. Code Cong. & Adm. News, 2042.
 
 
 18
 The Zang Court found that there was no legislative intent to preempt the mail fraud statute in enacting the penalty provisions of Sec. 754.
 
 
 19
 Corace argues that Sec. 754(a)(4) should serve to shelter him from a term of imprisonment. While it is true that this provision would keep Corace from being imprisoned under paragraph (3) in the absence of proper notice, it does not speak to imprisonment under any other statute. The Senate Conference Report indicates that it was the intention of Congress to preserve other penalties for corporate officers. The specific provisions of Sec. 754 do not give any indication that Congress intended to repeal by implication the other statutes that proscribed Corace's conduct.
 
 III.
 
 20
 Appellants' arguments that the EPAA regulations constitute a taking of their property without compensation and without due process provide no defense to a prosecution for mail fraud and making false statements. United States v. Kapp, 302 U.S. 214, (1937). As the government notes, if the defendants had a valid objection to the constitutionality of the price controls, their remedy was to certify their oil properly, and then challenge the controls in court.
 
 
 21
 However, there is no merit to their taking claim. Economic regulation of the use of property, and the price obtained for that property, does not constitute an unconstitutional taking. Bowles v. Willingham, 321 U.S. 503, 517-18 (1944). There is nothing in the EPAA which requires the appellants to sell their oil. "The Fifth Amendment prohibition against the taking of property without just compensation . . . refers only to direct appropriation and not to consequential injuries resulting from lawful regulations." Condor Operating Company v. Sawhill, 514 F.2d 351, 361 (TECA), cert. denied, 421 U.S. 976 (1975). Other circuits have upheld the EPAA controls that appellants challenge here against fifth amendment taking challenges. Mapco, Inc. v. Carter, 573 F.2d 1268, 1282-83 (TECA), cert. denied, 437 U.S. 904 (1978); Basin, Inc. v. FEA, 552 F.2d 931, 938 (TECA), cert. denied, 434 U.S. 821 (1977).
 
 
 22
 We agree with those circuits and affirm the judgment of the district court.